**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HERB PFEIFFER,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 10-2665** |
| | : | |
| **BOROUGH OF** | : | |
| **SLATINGTON, et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.** **October 7, 2010**

At a public meeting of Borough Council in March 2009, Herb Pfeiffer, the Borough Manager of Slatington, voiced opposition to Council's decision to forgive $44,000 remaining on an $80,000 loan made to the Vigilant Fire Company. A couple of months later, Council voted to terminate his employment. Mr. Pfeiffer brought this case against the Borough of Slatington, its Solicitor, and members of its Council, alleging retaliation and civil conspiracy under 42 U.S.C. § 1983, and various state law claims. The defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I will grant the motion in its entirety.

## I. BACKGROUND[1]

Herb Pfeiffer is a resident of Lehighton, a borough in Carbon County, Pennsylvania. In September 2008, he was hired by the Borough of Slatington for the position of Borough Manager, Borough Secretary, and Borough Treasurer, to serve as an at-will, non-union, and non-civil service employee. See Compl., Exh. A. Slatington is in Lehigh County. By letter dated August 14, 2008, Mr. Pfeiffer was provided a detailed description of the terms and conditions of his employment, terms which he accepted. Id.

During the course of his employment with the Borough, Mr. Pfeiffer worked with all members of the Council including Solicitor Edmund J. Healy, Esquire, Borough President Galen Freed, Borough Vice-President Byron Reed, and Council members Eldon Roberts, Paul Hoffman, and Russell Halman. See Compl. ¶¶ 3-8, 13.

In March 2009, Mr. Pfeiffer attended a public meeting of Borough Council during which it was decided that $44,000.00 remaining on an $80,000.00 loan made to the Vigilant Fire Company by the Borough be forgiven. Id. ¶ 14. Mr. Pfeiffer was vocal in his opposition to this decision to forgive the loan which he felt was being done without adequate reason or justification. Id. ¶ 16.

Defendant Reed is the co-owner of several properties located in the Borough, including a property which was formerly used as a lumber yard located on Cherry Street.

---

[1] The facts are gleaned from the complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

Id. ¶ 17. In March 2009, Mr. Pfeiffer and two Borough workers issued citations to Defendant Reed based on his Cherry Street property which had fallen into serious disrepair. Id. ¶ 18. They presented the citations to Magisterial District Justice Rod Beck during which a negotiated "settlement" was reached. Id. ¶ 19. A month later, Mr. Pfeiffer assisted in the issuance of a warning of citation to Defendant Reed based on another of his properties and a similar warning based on an abandoned vehicle owned by Defendant Reed and parked on a public street. Id. ¶ 20. Defendant Reed later approached Mr. Pfeiffer at his office and accused him of "picking on him." Id. ¶ 21.

At other times during his employment, Mr. Pfeiffer expressed differences of opinion with Council concerning matters in which he was involved. He never believed that his employment was in jeopardy. Id. ¶ 22.

On May 11, 2009, Mr. Pfeiffer was informed that he was to be placed on a thirty day probationary period due to his alleged failure to communicate with Defendant Healy and other members of Borough Council on a matter, unspecified in the complaint. Id. ¶ 23. Mr. Pfeiffer requested that Defendant Freed provide him some direction as to where to focus his efforts going forward. He was not provided any such feedback. Id. ¶¶ 24-25. Before the end of the probationary period, Borough Council convened a workshop and instructed Mr. Pfeiffer not to attend. Id. ¶ 26. That evening, Defendant Freed telephoned Mr. Pfeiffer and informed him that Borough Council voted to terminate his employment. Id. ¶ 27.

On the following day, i.e., May 27, 2009, Mr. Pfeiffer attended a meeting with Defendants Freed and Reed during which the proffered reasons for his termination were discussed, including but not limited to Borough Council's displeasure with Mr. Pfeiffer's public opposition to the decision to forgive the remaining loan balance of $44,000.00 made to the Vigilant Fire Company. Id. ¶ 28.

As of the date of the plaintiff's termination, Defendant Reed owed several thousands of dollars in fines issued by the Borough with Mr. Pfeiffer's involvement. Id. ¶ 29. Two months later, Borough President Freed directed an outside attorney to inform Magistrate Beck to have the citations withdrawn, sparing Defendant Reed the responsibility for payment of the fines. Id. ¶ 30. This decision gathered public attention and was the subject of local and regional newspaper articles which questioned its legitimacy and lawfulness. Id. ¶ 31.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the

plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

### A. First Amendment Claim

In Count One, Mr. Pfeiffer alleges that he was terminated as a direct result of and in retaliation for the exercise of his First Amendment Rights. See Compl. ¶ 37. To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment; and (2) that the protected

activity was a substantial factor in the alleged retaliatory action. Phyllis Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). The first factor is a question of law; the second factor is a question of fact. Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004).

A public employee's speech is protected under the First Amendment when (1) it was made in the employee's capacity as a citizen; (2) it involved a matter of public concern; and (3) the government employer had no adequate justification for treating the employee differently from other citizens. Hill v. Borough of Kutztown, 455 F.3d 225, 241-242 (3d Cir. 2006) (citing Garcetti v. Ceballos, 547 U.S. 410 (2006)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. at 421. One reason is that government employees are in a unique position to "express views that contravene governmental policies or impair the proper performance of governmental functions." Id. at 419. Consequently, if the government, as an employer, were unable to exercise some degree of control over the employees' speech, "there would be little chance for the efficient provision of public services." Id. at 418. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. Rankin v. McPherson, 483 U.S. 378, 384 (1987) (quoting Connick v. Myers, 461 U.S. 138, 147-148 (1983)).

Here, Article III of Slatington's Borough Ordinance[2] outlines the Borough Manager's powers and duties. As Manager, Mr. Pfeiffer was required, *inter alia,* to be responsible for the administration of the budget; to attend all meetings of the Council and its committees with the right to take part in the discussion; to have full responsibility of the parking enforcement officer and crossing guard staff; and to see that all money owed the Borough is promptly paid and that proper proceedings are taken for the security and collection of all the Borough's claims. See Def's Exh. B. It is undisputed that Mr. Pfeiffer attended the March 2009 public Borough Council meeting in his capacity as Borough Manager, Borough Secretary, and Borough Treasurer. He lived in a neighboring county, and as such had no personal interest in the activities of Slatington's Borough Council. Because one of his duties was to ensure that all the money owed the Borough was promptly paid and that proper proceedings were taken for the security and collection of all the Borough's claims, Mr. Pfeiffer's comments against the loan forgiveness directly implicated his responsibilities as Borough Manager. His statements were wholly and substantially linked with his employment, and made pursuant to his official duties and in the scope of his employment as the Borough Manager. Thus, the communication in question was not insulated from employer discipline. Garcetti v. Ceballos, 547 U.S. at 421.

Mr. Pfeiffer also alleges in Count One that during his employment, he engaged in

---

[2] As legislative records, the court may take judicial notice of the Borough Ordinance.

protected speech both in and *outside* of his role as an employee of the defendant. See Compl. ¶ 36 (emphasis added). The complaint includes no example of speech that could remotely be considered outside the role of his employment. Even if one would characterize Mr. Pfeiffer's involvement in the issuance of citations as speech, it would still not be protected speech. That activity was also linked with his employment, and performed pursuant to his official duties as the Borough Manager.

Because Mr. Pfeiffer was speaking in his capacity as the Borough Manager, and not as a citizen, this inquiry is ended. Accordingly, I find as a matter of law that Mr. Pfeiffer's statements and activity alleged were not protected by the First Amendment. See Phyllis Hill v. City of Scranton, 411 F.3d at 125; see also Curinga v. City of Clairton, 357 F.3d at 310. I will dismiss Count One in its entirety.[3]

**B. Civil Conspiracy**

In Count Two, Mr. Pfeiffer contends that the individual defendants, acting under color of state law, formulated and devised a plan to terminate him because of his expressions of disagreement with certain decisions of Borough Council. See Compl. ¶ 42. To state a § 1983 claim for civil conspiracy, a plaintiff must allege "persons acting

---

[3] I note that the fact that the Borough of Slatington was also included in this Count makes no difference in its outcome. A municipality may be held liable under § 1983 for the actions of its employees and agents only when "the execution of [the municipality's] policy or custom . . . inflicts the injury." Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). Absent an underlying constitutional violation by an agent of the municipality, however, the municipality itself may not be held liable under § 1983. Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003). Because Mr. Pfeiffer suffered no violation of his constitutional rights, the Borough of Slatington is also dismissed as a defendant.

under color of state law conspired to deprive him of a federally protected right."[4] Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), *superceded by statute on other grounds as recognized by* P.P. v. West Chester Area Sch. Dist., 585 F.3d 727 (3d Cir. 2009).

It is undisputed that the individual defendants, as officers of the Borough of Slatington, would be considered state actors for § 1983 purposes. Further, it has been decided that the statements and activities alleged in the complaint are not protected activity under the First Amendment. However, in addition to his opposition to the loan forgiveness and his involvement in the issuance of citations to Defendant Reed, Mr. Pfeiffer includes in Count Two an additional example of an expression of his disagreements with Council. At some point during his employment, Mr. Pfeiffer pointed out to Defendant Healy, the Borough Solicitor, that work performed by Mr. Healy's firm on a proposed model ordinance for which the Borough was charged in excess of $1,000 had in fact already been performed by Defendant Healy in the past and was a duplication of that work. As Borough Manager, Mr. Pfeiffer was charged with the responsibility of the Borough's budget and to supervise the performance and faithful execution of all contracts made with the Borough. See Def's Exh. B at § 34-14(B)(12). Mr. Pfeiffer's challenging a duplicative invoice directly implicated his responsibilities as Borough

[4] Unlike conspiracies brought under § 1985(3), a § 1983 conspiracy claim does not require that the conspiracy be motivated by invidious discrimination.

Manager. It was wholly and substantially linked with his employment, and thus not protected by the First Amendment.

Accordingly, because Mr. Pfeiffer was not deprived of a federally-protected right, there can be no civil conspiracy pursuant to 42 U.S.C. § 1983. See Ridgewood Bd. of Educ., 172 F.3d at 254. I will dismiss Count Two in its entirety.

**C. State Law Claims**

In addition to the two federal claims, Mr. Pfeiffer included three state law claims in his complaint: (1) civil conspiracy under Pennsylvania law; (2) breach of contract; and (3) a violation of Pennsylvania's Wage Payment and Collection Law. Mr. Pfeiffer claims that the court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367, which provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Federal courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). The claims brought pursuant to 42 U.S.C. § 1983 will be dismissed. As this case is still in the early stages of litigation, there is no foreseeable prejudice to the parties if these state law claims were dismissed. Accordingly, I decline to

exercise supplemental jurisdiction over the state law claims in this case under § 1367(c)(3) and will dismiss them without prejudice.

An appropriate Order follows.